UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NIKE USA, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO: 3:23-CV-00209-JD-MGG |
| ) | |
| CARDINAL PROMOTIONS, INC. ) | |
| ) | |
| Defendant/Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NORTHWEST BANK, ) | |
| ) | |
| Third-Party Defendant. ) | |

**THIRD-PARTY DEFENDANT NORTHWEST BANK'S ANSWER AND AFFIRMATIVE DEFENSES TO CARDINAL PROMOTIONS, INC.'S THIRD-PARTY COMPLAINT**

COMES NOW Third-Party Defendant Northwest Bank ("Northwest") and hereby submits its Answer and Affirmative Defenses to the Third-Party Complaint filed by Third-Party Plaintiff Cardinal Promotions, Inc. ("Cardinal"), stating as follows:

**ANSWER**

**Introduction**

This Third-Party Complaint is filed in response to Plaintiff Nike USA, Inc.'s ("Nike") Complaint against Cardinal seeking to recover over $1.4 million in alleged overdue invoices for Nike products sold to Cardinal in 2022. The Bank (through its predecessor Mutual Bank) provided an Irrevocable Letter of Credit (the "LOC") in favor on Nike that expired by its own terms on January 31, 2023. Contrary to the plain language of the LOC and despite written assurances to Cardinal and Cardinal's counsel by Bank representatives that it would not honor any draw request by Nike received after January 31, 2023, the Bank reneged on those

1

commitments. The Bank wrongfully and negligently honored a draw request received by the Bank on February 28, 2023, four weeks after the LOC expired. Cardinal files this Third-Party Complaint to recover the $400,000 wrongfully paid to Nike by the Bank.

**ANSWER**: Northwest denies the allegations contained in the "Introduction" paragraph of the Third-Party Complaint ("Complaint").

## Parties and Jurisdiction

1. Defendant and Third-Party Plaintiff Cardinal Promotions, Inc. is an Indiana corporation with its principal place of business in Granger, Indiana. Cardinal is a citizen of Indiana.

**ANSWER**: Northwest does not have sufficient information to admit or deny the allegations in Paragraph 1 of the Complaint and therefore denies same.

2. Third-Party Defendant Northwest Bank is a Pennsylvania corporation with its principal place of business in Warren, Pennsylvania. The Bank is a citizen of Pennsylvania.

**ANSWER**: Northwest admits the allegations in Paragraph 2 of the Complaint.

3. This Court has subject-matter jurisdiction over Cardinal's claims against the Bank under 28 U.S.C. § 1332 because complete diversity of citizenship exists between the Bank and Cardinal and the amount in controversy exceeds $75,000.

**ANSWER**: Northwest neither admits nor denies Paragraph 3 of the Complaint as it is an allegation of a legal conclusion. Notwithstanding, Northwest does not dispute jurisdiction.

4. The Court has personal jurisdiction over all the parties to this action under either a general or specific jurisdiction analysis based on the Bank's contacts with the Northern District of Indiana and the state of Indiana.

**ANSWER**: Northwest neither admits nor denies Paragraph 4 of the Complaint as it is an allegation of a legal conclusion. Notwithstanding, Northwest does not dispute jurisdiction.

5. Venue of this action is proper in this court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Indiana.

**ANSWER**: Northwest neither admits nor denies Paragraph 5 of the Complaint as it is an allegation of a legal conclusion. Notwithstanding, Northwest does not dispute venue.

## Factual Background

### Mutual Bank issues the LOC that the Bank later assumes.

6. For more than 17 years, Nike and Cardinal had a successful and profitable relationship. Cardinal purchased millions of dollars of Nike product and Cardinal timely paid Nike invoices. Cardinal built a solid working relationship with Nike and the Nike representative assigned to Cardinal's account.

**ANSWER**: Northwest does not have sufficient information to admit or deny the allegations in Paragraph 6 of the Complaint and therefore denies same.

7. The agreements between Nike and Cardinal required Cardinal to obtain a standby letter of credit in the amount of $400,000 in favor of Nike. Cardinal secured an Irrevocable Letter of Credit dated January 31, 2020 from Mutual Bank in Mishawaka, Indiana (previously identified as the "LOC"). A true and correct copy of the LOC is attached as Ex.1. Cardinal and the Bank had an existing banking relationship that included, among other things, the LOC at issue here. Soon after the LOC issued, Third-Party Defendant Northwest Bank and Mutual Bank merged and Northwest Bank became the successor to Mutual Bank and assumed all

responsibilities from Mutual Bank for the letter of credit at issue here. The Bank made no material changes to the LOC after it assumed the LOC from Mutual Bank.

**ANSWER**:   Northwest lacks sufficient information to admit or deny the first sentence of Paragraph 7. Northwest admits the second sentence of Paragraph 7, except to the extent it implies only one letter of credit was issued by Mutual Bank ("Mutual") to Cardinal on January 31, 2020. Northwest admits Ex. 1 is a true and accurate copy of one of the letters of credit issued by Mutual Bank on January 31, 2020, but otherwise denies the allegations in the third sentence of Paragraph 7. Northwest lacks sufficient information to admit or deny the fourth sentence of Paragraph 7 and therefore denies same. Northwest admits it became the successor to Mutual after January 31, 2020 but otherwise denies the allegations in the fifth sentence of Paragraph 7. Northwest admits the sixth sentence in Paragraph 7.

   8.   The LOC is in the amount of $400,000 and names Nike USA, Inc. as the beneficiary. By its terms, the LOC's expiration date (originally set for January 31, 2021) "shall automatically extend for an additional one year from the present expiration date, unless thirty (30) days prior to such maturity date we shall notify you in writing that we elect not to renew this Letter of Credit for such additional period." (Exhibit 1, p. 2). Cardinal relied on the terms and conditions of the LOC and the advice given by the Bank regarding the LOC when conducting its business relationship with Nike.

ANSWER:   Northwest neither admits or denies the content of Ex. 1 as the document speaks for itself and therefore it cannot admit or deny the first two sentences of Paragraph 8. Northwest denies the allegations in the last sentence in Paragraph 8.

   9.   Apparently, the Bank issued a second version of the LOC (hereinafter the "Second LOC") on the same day as the LOC – January 31, 2020. The material terms of the

Second LOC are virtually identical to the LOC with just one exception: the deadline to give notice to Nike of non-renewal. The Second LOC required that the Bank give Nike 90 days notice (not 30 days as stated in the LOC) before the January 31, 2023 expiration if the Bank elected not to renew the letter of credit. A true and correct copy of the Second LOC is attached as Exhibit 2.

**ANSWER**:   Northwest admits Exhibit 2 is a true and accurate copy of a letter of credit issued by Mutual on January 31, 2020 to Cardinal. Northwest cannot admit or deny any allegations as to the content of Exhibit 2 as the document speaks for itself. Northwest lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 9 and therefore denies same.

  10. The LOC and the Second LOC have the same Letter of Credit No. – XXXXXX9811. Both are signed by the same Vice President of Mutual Bank – Tedd Schaffer. Both letters of credit are for the same amount. (Compare Ex. 1 to Ex. 2).

**ANSWER**:   Northwest cannot admit or deny the allegations in Paragraph 10 as the documents speak for themselves.

  11. Ted Schaffer, a Mutual Bank Vice President, sent both the LOC and the Second LOC to Derrick Dlouhy, a Credit Analyst at Nike, on February 4, 2020. Mr, Schaffer cc'd Cardinal representatives on that email. Mr. Dlouhy received both letters of credit and responded to that email "[e]verything is good to go on our end." (Ex. 3). Nike never questioned the terms of the LOC or the Second LOC or pointed out any discrepancy in the terms addressing non-renewal in the LOC and the Second LOC. Cardinal decides not to renew the LOC.

**ANSWER**:   Northwest lacks sufficient knowledge to admit or deny the allegations in Paragraph 11 of the Complaint and therefore denies same.

  12. As early as the summer of 2022, Cardinal engaged in communications with the Bank concerning the terms of the LOC with Nike. Cardinal discussed several options with the

Bank regarding the LOC, including modifying the terms and the option of not renewing the LOC when it expired on January 31, 2023.

**ANSWER**: Northwest does not have sufficient knowledge to admit or deny the allegations in Paragraph 12 and therefore denies same.

13. Cardinal had numerous communications in the summer and fall of 2022 about the procedure for not renewing the LOC. The Bank's position was consistent in its advice to Cardinal – only 30-days notice was required for non-renewal. At the same time, Cardinal and Nike (with the Bank's involvement) were negotiating issues involving the business relationship between Nike and Cardinal, including revised terms for the LOC. The Bank took an active role in these discussions and was aware of the business issues between Nike and Cardinal.

**ANSWER**: Northwest does not have sufficient knowledge to admit or deny the allegations in Paragraph 13 and therefore denies same.

14. The Bank was therefore aware throughout 2022 of Cardinal's desire to keep non-renewal of the LOC as a viable option. In fact, on September 28, 2022, the Bank confirmed, after consulting Sharon Fortuna, the Bank's "L/C specialist", that if Cardinal did not want to renew the LOC, the Bank was required to give Nike notice at the very latest on December 31, 2022. (Ex. 4, pp. 5-7). Fortuna's advice confirmed the 30-day notice requirement.

**ANSWER**: Northwest denies the first sentence of Paragraph 14 of the Complaint. Northwest admits Sharon Fortuna sent the email referenced in the second sentence of Paragraph 14 and cannot admit or deny the remainder of Paragraph 14 as the document speaks for itself.

15. In several written and oral communications with the Bank, representatives of the Bank repeatedly told Cardinal that the LOC had a 30-day deadline to provide notice to Nike of a non-renewal. In other words, Cardinal was advised by the Bank that the Bank was required to

give a notice of non-renewal to Nike no later than December 31, 2022. The representatives of the Bank who made these assurances to Cardinal and its representatives included Gary R. Benedix, the Bank's Business Banking Officer II, Brenda Yurick, the Bank's Assistant General Counsel, Sharon Fortuna, Commercial Loan Operations, Letter of Credit Department, and Michele Banes, AVP, Client Relationship Manager. All of these Bank officials were in agreement on three key facts. First, only 30-days notice was required to Nike in the event Cardinal did not want to renew the LOC. Second, if the Bank gave 30-days notice, the LOC would expire by its terms on January 31, 2023. Third, the Bank would not Honor any draw requests by Nike after January 31, 2023.

**ANSWER**:   Northwest admits there were communications regarding the LOC but does not have sufficient information to admit or deny the remaining allegations in Paragraph 15 of the Complaint and therefore denies same.

  16.   For example, on November 15, 2022 Mr. Benedix informed Cardinal that the notice of non-renewal should be sent to Nike no later than December 19, 2022. And with the notice of non-renewal sent to Nike, the "[l]atest date that Nike can draw on the current L/C would be 1/31/2023 the L/C's current expiration date." (See Ex. 5, p. 3). Mr. Benedix affirmed the 30-day notice requirement to Cardinal on December 5, 2022. (See Ex. 6).

**ANSWER**:   Northwest denies the allegations in Paragraph 16 of the Complaint insofar as they do not pertain to the content of any document or purport to interpret any document. Northwest can neither admit nor deny the content of Exhibits 5 and 6, or quoting said exhibits, as the documents speak for themselves.

  17.   Ms. Yurick, the Bank's Senior Vice President and Deputy Chief Counsel told Cardinal unequivocally on February 7, 2023 that she was "confirming that the letter of credit

expired on January 31, 2022 [sic 2023]. The only way a payment would be made under the LOC at this point in time is if the specific provisions set forth in the document regarding payments to Nike and bankruptcy filing arise." (Ex. 7, p. 2 (emphasis from Complaint removed)).

**ANSWER**: Northwest denies the allegations in Paragraph 17 of the Complaint insofar as they do not pertain to the content of any document or purport to interpret any document. Northwest can neither admit nor deny the content of Exhibit 7, or quoting said exhibit, as the document speaks for itself.

18. Cardinal relied on the Bank to give accurate and sound advice regarding the termination of the LOC and the Bank owed a duty to Cardinal to act with reasonable care in both drafting and advising on the LOC's terms.

**ANSWER**: Northwest denies the allegations in Paragraph 18 of the Complaint.

19. On December 19, 2022, Cardinal gave notice to the Bank instructing the Bank not to renew the LOC. (See Ex. 8). The Bank, in turn, provided timely notice under the LOC to Nike that same day by FedEx. (See. Ex. 9). In the Bank's Notice of Non-Extension, the Bank informed Nike that the LOC expires on January 31, 2023. (*Id.*).

**ANSWER**: Northwest denies the allegations in Paragraph 19 of the Complaint insofar as they do not pertain to the content of any document or purport to interpret any document. Northwest can neither admit nor deny the content of Exhibits 8 and 9, or quoting said exhibits, as the documents speak for themselves.

20. On February 2, 2023, Mr. Benedix informed Cardinal that the Bank held a conference call with the Bank's letter of credit administrator, two senior managers from credit, and Ms. Yurick, in the Bank's general counsel's office. As a result of that meeting, Mr. Benedix reported that the Bank would reject any draw request that came in at this time since the LOC had

expired on January 31, 2023. (See Ex. 10). As set forth above, Mr. Yurick, the Bank's Deputy Chief Counsel, agreed that the LOC expired on January 31, 2023. (Ex. 7, p. 2).

**ANSWER**: Northwest denies the allegations in Paragraph 20 of the Complaint insofar as they do not pertain to the content of any document or purport to interpret any document. Northwest can neither admit nor deny the content of Exhibits 7 and 10, or quoting said exhibits, as the documents speak for themselves.

21. On February 16, 2023, Nike apparently reached out to the Bank and told the Bank that Nike intended to issue a draw request on the LOC. This notice from Nike prompted another internal meeting at the Bank, including Raymond Learn, a Senior Vice President and Deputy Chief Counsel at the Bank. Mr. Learn concurred with the previous conclusion that the LOC expired on January 31, 2023 and that the Bank would deny any request by Nike for draw for "being in noncompliance with the terms of the L/C and draw instructions." (See Ex. 11).

**ANSWER**: Northwest denies the allegations in Paragraph 21 of the Complaint insofar as they do not pertain to the content of any document or purport to interpret any document. Northwest can neither admit nor deny the content of Exhibit 11, or quoting said exhibit, as the document speaks for itself.

22. On February 16, 2023, more than two weeks after the LOC expired, Nike made a draw request to the Bank. (See Ex. 12). The Bank, through counsel, refused to honor the draw request. (See Ex. 13).

**ANSWER**: Northwest denies the allegations in Paragraph 22 of the Complaint insofar as they do not pertain to the content of any document or purport to interpret any document. Northwest can neither admit nor deny the content of Exhibits 12 and 13, or quoting said exhibits, as the documents speak for themselves.

23. Then on February 28, 2023, Nike made a second draw request on the LOC. (See Ex. 14). The Bank backpedaled on its previous statements to Cardinal that any draw requests received after January 31, 2023 would be denied. This time, the Bank honored the draw request, over Cardinal's objection, and disbursed $400,000 to Nike. The Bank took this action even though the LOC by its terms and the Bank's admission had expired on January 31, 2023.

**ANSWER**: Northwest admits the first sentence of Paragraph 23. Northwest denies the second sentence of Paragraph 23. Northwest admits the third sentence of Paragraph 23. Northwest denies the final sentence of Paragraph 23 of the Complaint.

## Claims for Relief

### COUNT I
### Breach of Contract

24. Cardinal restates and realleges the preceding paragraphs as if fully set forth herein.

**ANSWER**: Northwest adopts and its answers to the preceding allegations and restates them collectively herein.

25. The LOC is a valid and enforceable agreement supported by consideration with obligations owed to Cardinal by the Bank.

**ANSWER**: Northwest denies the allegations in Paragraph 25 of the Complaint.

26. As set forth above, the Bank materially breached its obligations owed to Cardinal under the terms of the LOC.

**ANSWER**: Northwest denies the allegations in Paragraph 26 of the Complaint.

27. As a direct and proximate result of the Bank's material breach of the LOC, Cardinal has suffered damages.

**ANSWER**: Northwest denies the allegations in Paragraph 27 of the Complaint.

28. Cardinal has satisfied all conditions precedent to bringing this action.

**ANSWER**:   Northwest denies the allegations in Paragraph 28 of the Complaint.

## COUNT II
## Promissory Estoppel

29.   Cardinal restates and realleges the preceding paragraphs as if fully set forth herein.

**ANSWER**:   Northwest adopts and its answers to the preceding allegations and restates them collectively herein.

30.   The Bank made definite and substantial promises and commitments to Cardinal regarding the LOC. Based on the facts set forth above, the Bank promised Cardinal and Cardinal's counsel that, among other things, the LOC had been effectively terminated as of January 31, 2023. The Bank further promised that is would not honor any draw requests by Nike received after January 31, 2023.

**ANSWER**:   Northwest denies the allegations in Paragraph 30 of the Complaint.

31.   The Bank made these statements with the expectation that Cardinal would rely on them.

**ANSWER**:   Northwest denies the allegations in Paragraph 31 of the Complaint.

32.   Cardinal in fact reasonably relied on the statements made by the Bank.

**ANSWER**:   Northwest denies the allegations in Paragraph 32 of the Complaint.

33.   Justice can only be avoided by the enforcement of the Bank's promises and commitment to Cardinal.

**ANSWER**:   Northwest denies the allegations in Paragraph 33 of the Complaint.

## COUNT III
## Negligence

34. Cardinal restates and realleges the preceding paragraphs as if fully set forth herein.

**ANSWER**: Northwest adopts and its answers to the preceding allegations and restates them collectively herein.

35. The Bank owed a duty of reasonable care to Cardinal based on the parties' banking relationship.

**ANSWER**: Northwest denies the allegations in Paragraph 35 of the Complaint.

36. The Bank breached that duty by, among other things, (1) failing to give accurate advice to Cardinal regarding the termination of the LOC; (2) wrongfully honoring Nike's untimely draw request in February 2023. Alternatively and two the extent the Bank issued two LOCs with different notice dates, the Bank also breached its duty of reasonable care in the preparation of the letters of credit.

**ANSWER**: Northwest denies the allegations in Paragraph 36 of the Complaint.

37. As a result of the Bank's breach, Cardinal incurred damages.

**ANSWER**: Northwest denies the allegations in Paragraph 37 of the Complaint.

## COUNT IV
## Breach of the UCP

38. Cardinal restates and realleges the preceding paragraphs as if fully set forth herein.

**ANSWER**: Northwest adopts and its answers to the preceding allegations and restates them collectively herein.

39. The Bank wrongfully honored Nike's draw request on the LOC because the LOC had expired several weeks before Nike made the draw request.

**ANSWER**: Northwest denies the allegations in Paragraph 39 of the Complaint.

40. Cardinal suffered damages as a result of the wrongful honor and seeks to recover damages under the UCP.

**ANSWER**: Northwest denies the allegations in Paragraph 40 of the Complaint.

WHEREFORE, Third-Party Defendant Northwest Bank prays that Third-Party Plaintiff Cardinal Promotions, Inc. take nothing by way of its Third-Party Complaint, that judgment be entered in favor of Northwest Bank, that the Court grant attorneys' fees and costs where applicable, and that the Court grant all other just and proper relief.

## AFFIRMATIVE DEFENSES

COMES NOW Northwest Bank ("Northwest") and for its Affirmative Defenses to the Third-Party Complaint filed by Cardinal Promotions, Inc. ("Cardinal") states as follows:

1. To the extent any allegation is not specifically admitted or denied in Northwest's Answer, Northwest hereby denies any such allegation.

2. Cardinal fails to state a claim for which can be granted.

3. Cardinal fails to comply with Fed. R. Civ. P. 8 by failing to provide a short plain statement of its claims.

4. Cardinal fails to plead its Third-Party Complaint in good faith as required by Fed. R. Civ. P. 11.

5. Cardinal's claims are barred by waiver and estoppel.

6. Cardinal's claims are barred by the doctrine of unclean hands.

7. Cardinal's claims are barred by its agreement to hold harmless and indemnify Mutual Bank and Northwest.

8. Any breach by Northwest is excused by Cardinal's breach of its obligation of good faith and fair dealing.

9. To the extent Northwest bears any fault, it is reduced by the comparative fault of Cardinal.

10. Cardinal's comparative fault is greater than 50% and therefore it cannot recover on any claim based on fault.

WHEREFORE, Third-Party Defendant Northwest Bank prays that Third-Party Plaintiff Cardinal Promotions, Inc. take nothing by way of its Third-Party Complaint, that judgment be entered in favor of Northwest Bank, that the Court grant attorneys' fees and costs where applicable, and that the Court grant all other just and proper relief.

Respectfully submitted,

*/s/ Matthew J. Anderson*
Sean M. Towner (29082-71)
Matthew J. Anderson (27511-71)
*Attorneys for Third-Party Defendant Northwest Bank*

### CERTIFICATE OF SERVICE

I hereby certify a copy the Third-Party Defendant Northwest Bank's *Answer and Affirmative Defenses to Third-Party Complaint* was served on all counsel of record on June 2, 2023 via the CM/ECF service.

*/s/ Matthew J. Anderson*
Matthew J. Anderson

MAY • OBERFELL • LORBER
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN  46545
Phone: (574) 243-4100
Fax:    (574) 232-9789
Email: stowner@maylorber.com
          manderson@maylorber.com